Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, except for minor modifications to Finding of Fact #12 and the addition of Finding of Fact #22, Conclusions of Law #6 and #7, Award #4 and #7 and the Order, as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in the Pre-trial Agreement as
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, the employer-employee relationship existed between the named plaintiff and defendant-employer.
3. The employer was self-insured for purposes of workers' compensation coverage.
4. Plaintiff's average weekly wage at all times relevant to this claim was $359.10.
* * * * * * * * * * * *
The Full Commission adopts the findings of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was born on February 22, 1942. She completed the eighth grade. She worked as a truck driver for approximately 13 and 1/2 years prior to coming to work for defendant-employer.
2. Plaintiff worked for defendant-employer as a long-haul truck driver, working with her husband as a team. In addition to driving, her duties included fueling and unloading the truck.
3. On September 23, 1992, plaintiff sustained an admittedly compensable injury by accident while delivering to a business in California. Plaintiff fell as she was stepping down from the truck. As a result of her fall, she sustained a fracture to her distal radius of her right wrist. Plaintiff is right handed.
4. Plaintiff's injury by accident was the subject of a Form 21 which was approved by the Industrial Commission on July 13, 1993. The Form 21 shows an average weekly wage of $359.10 and a compensation rate of $239.41.
5. Following her accident, plaintiff received emergency treatment in California. When she returned to North Carolina, plaintiff selected orthopaedic surgeon Dr. Paul Eugene Brown, whom she first saw on October 1, 1992.
6. Dr. Brown took x-rays, from which he concluded the fracture was in an acceptable reduced position. He continued follow-up with plaintiff, and on October 28 her cast was removed. X-rays on that day showed early healing with no change in position.
7. On November 11, 1992, when Dr. Brown saw plaintiff, she had considerable swelling in her hand and some numbness. He suspected secondary carpal tunnel syndrome due to the swelling of her hand, and he injected the carpal tunnel which gave her some relief. Dr. Brown continued plaintiff in a splint and started her on occupational therapy.
8. Plaintiff was involved in occupational therapy from October 29, 1992 until she was released on February 12, 1993. She continued to be followed by Dr. Brown during this time as well. Throughout her occupational therapy sessions, the therapist noted that plaintiff continued to be motivated to improve and to be cooperative with the treatment rendered. Plaintiff did show improvement.
9. By January 8, 1993, Dr. Brown noted she had near full pronation and supination, with about 25 degrees of extension, when normal extension is 60 to 70 degrees, and 20 degrees of flexion, when normal flexion is around 70 degrees. He anticipated she could probably go back to light duty with limited use of her right hand. He felt she could return to her regular job driving trucks by mid February.
10. Although plaintiff's mobility continued to improve, she did not improve a lot on her weakness. By June 14, 1993, Dr. Brown noted she had 45 degrees of extension and 30 degrees of flexion. At the same time however, he was noticing signs of reflex sympathetic dystrophy.
11. Although Dr. Brown had released plaintiff to return to light duty, the defendant-employer did not have any light duty to offer her. The only office job which would be light duty was a job being filled by Angela Hager who was a co-owner of Lundy Trucking. Therefore, this was not really a job available to plaintiff.
12. Although plaintiff's bone fracture had healed during this time, other changes were taking place in her wrist, such as the development of the reflex sympathetic dystrophy symptoms, as well as the development of arthritis, such that plaintiff's pain began increasing. When she was released by Dr. Brown in February, 1993, plaintiff still had problems using her right hand, and would not have been able to grip a steering wheel for long periods of time or shift gears, both movements that were needed to drive a truck. Without approval of the Industrial Commission, defendant stopped paying temporary total disability compensation to plaintiff in July, 1993 even though a Form 21 agreement for payment of compensation had been approved. Plaintiff has not received any temporary total disability compensation since July, 1993. Defendant has also been unreasonably slow in responding to plaintiff's request for medical treatment.
13. When plaintiff could not return to her regular work for defendant-employer, they did not offer her other options within her capabilities, or offer her assistance in locating other positions.
14. During this time following her healing period from February, 1993 forward, plaintiff was not unable to use her right hand. Plaintiff was able to use her right hand to write, to carry items such as her purse or groceries, and to drive her own personal van. However, the stress that would be involved in driving a truck long distance, in griping the steering wheel for long periods of time, and changing gears would be different and greater than the stress caused by driving her personal vehicle.
15. Plaintiff requested an independent medical evaluation, and eventually was referred to Dr. Russell Garland, whom she first saw on December 8, 1993. Dr. Garland took her history, reviewed her prior x-rays, and took new x-rays. He noted that her radius had a misalignment of 20 degrees. Normally, the radius inclination is 10 degrees volar, whereas the plaintiff's had healed 10 degrees dorsal, which made the misalignment 20 degrees. This is something that is very difficult to fix following a fracture of the wrist. Dr. Garland also noted mottling, which is reabsorption of the cartilage and calcium within the bone and evidence of reflex sympathetic dystrophy. He also noted that there was sclerosis and a narrowing of the joint space which usually means there is arthritis within the joint.
16. Dr. Garland's final assessment was that plaintiff had significant disability to her right hand, which he thought was only going to get worse, such that plaintiff might eventually need a fusion. It is Dr. Garland's opinion that plaintiff could not return to her job as a truck driver at any time following her injury by accident.
17. A Functional Capacity Evaluation was done sometime around March, 1994. The FCE showed that plaintiff was capable of light activity, lifting 20 pounds occasionally and 10 pound frequently. Although plaintiff did not show symptom magnification, it was the tester's impression that she gave a submaximal effort, which somewhat invalidates the test.
18. Due to his concerns that plaintiff's condition would continue to deteriorate, Dr. Garland referred her to Dr. Warren B. Burrows, an expert in dealing with the wrist. Dr. Burrows saw plaintiff only once on June 27, 1994. At that time, he felt further nerve conduction studies were warranted in order to better evaluate her condition and her options.
19. Following her injury by accident, although plaintiff's wrist fracture has healed, she has developed other problems with her wrist and has not regained her full range of motion or her full grip strength. As a result of her wrist injury, plaintiff has been unable to return to her position as a long distance truck driver. Defendant-employer has not offered plaintiff suitable employment within her capabilities.
20. Although plaintiff is not disabled from using her right hand, she is somewhat restricted in using it, and needs rehabilitation and possible vocational training to equip her to reenter the work force.
21. Plaintiff's condition is not stable and she is not at maximum medical improvement. Plaintiff needs additional follow-up medical evaluation and treatment for her right hand, especially in view of the fact that her condition seems to be deteriorating with arthritis and possible reflex sympathetic dystrophy. The person who would be appropriate for such follow-up would be Dr. Burrows at the Carolina Hand Center in Charlotte.
22. Defendant-insurer brought this appeal.
* * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 23, 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant when she fell while getting out of the truck she and her husband drove for defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury by accident on September 23, 1992, plaintiff sustained a fracture to the distal radius of her right wrist, for which she has incurred medical expenses for treatment rendered which was reasonably necessary to effect a cure, give relief, or lessen her period of disability. N.C. Gen. Stat. § 97-2(19).
3. Defendant is responsible for any medical treatment rendered or to be rendered to plaintiff for her right hand as a result of her injury by accident. Dr. Burrows, an orthopaedic specialist in treatment of the hand, is the physician in the best position to render plaintiff follow-up care. N.C. Gen. Stat. § 97-25.
4. Defendant is responsible for any reasonable rehabilitation assistance to plaintiff to enable her to return to gainful employment. N.C. Gen. Stat. § 97-25.
5. As a result of her injury by accident of September 23, 1992, plaintiff has been unable to earn wages at the same rate she was earning at the time of her injury by accident in the same or any other employment, and has been temporarily totally disabled since September 23, 1992. N.C. Gen. Stat. § 97-29.
6. Without approval of the Industrial Commission, defendant unjustifiably and without excuse unilaterally terminated plaintiff's temporary total disability compensation in July, 1993 even though they had accepted liability pursuant to a Form 21 agreement for "necessary weeks". Plaintiff is entitled to a 10% penalty on all payments due after termination of benefits.
7. Plaintiff is entitled to have the costs of this appeal, including reasonable attorney fees taxed to defendant. N.C. Gen. Stat. § 97-88.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following
AWARD
1. Defendant shall pay all medical expenses incurred by plaintiff as a result of her injury by accident of September 23, 1992, for such treatment as reasonably tends to effect a cure or give relief or lessen her period of disability.
2. Defendant shall pay for ongoing treatment of plaintiff's wrist that may be reasonably necessary, including the treatment to be rendered by Dr. Burrows.
3. Defendant shall pay for reasonable rehabilitative or vocational assistance to enable plaintiff to return to gainful employment.
4. Defendant shall pay plaintiff compensation at the rate of $239.41 per week from September 24, 1992 and continuing thereafter for so long as plaintiff remains temporarily totally disabled, or until further Order of the Commission. Defendant shall pay a 10% penalty on compensation due plaintiff from the date workers' compensation benefits were terminated.
5. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff herein is approved for plaintiff's counsel. Twenty-five percent of the compensation accrued and due plaintiff shall be deducted therefrom and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be forwarded to plaintiff's counsel.
6. Defendant shall pay the costs, including expert witness fees of $310.00 to Dr. Brown as previously approved, and $325.00 to Dr. Garland.
7. Defendant shall also pay to plaintiff's counsel an attorney's fee of $2,000.00 as part of the cost of this appeal. Said attorney's fee shall be in addition to the attorney fee awarded in paragraph 5 above.
* * * * * * * * * * * *
ORDER
In the discretion of the Full Commission after giving due consideration to defendant's motion for a hearing de novo
and plaintiff's response thereto,
IT IS ORDERED that defendant's motion for a hearing de novo
is DENIED.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ J. RANDOLPH WARD COMMISSIONER
BSB:md